UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARCHER WESTERN CONSTRUCTION, LLC, <br><br> Plaintiff, <br><br> v. <br><br> OBSIDIAN SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | Case No. 24 C 8106 <br><br> Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Archer Western Construction, LLC ("Archer Western"), a general contractor, hired E. Bartley Enterprise, Inc. ("Bartley"), a subcontractor, to haul concrete for a construction project on highway I-95 southbound near the interchange with I-295 in Jacksonville, Florida. After a driver operating a motor vehicle on I-95 traveling southbound struck gravel and debris allegedly dumped on the highway by Bartley, the driver lost control of his vehicle, crashed into the guard rail, and allegedly suffered personal injuries. The driver sued Archer Western and Bartley in the Fourth Judicial Circuit of Duval County, Florida (the "Underlying Lawsuit"), alleging one count of negligence each against Archer Western and Bartley. Count I of the First Amended Complaint filed in the Underlying Lawsuit (the "Underlying Complaint") alleges that Archer Western breached a duty of care owed by Archer Western to the driver by failing to: (1) "perform reasonable inspections of the [Bartley] truck"; (2) "clean up the construction materials dumped by the [Bartley] truck in a reasonable and timely manner"; and (3) "provide reasonable warnings of construction materials being dumped onto the public roadway by the [Bartley] truck." Doc. 10-1 at ¶¶15, 17, 19, 22. Count II of the Underlying Complaint alleges Bartley breached a duty of care

owed by Bartley to the driver by failing to: (1) properly maintain its truck, resulting in it negligently dumping large amounts of debris and gravel onto the roadway; (2) "clean up the construction materials dumped on the public roadway by one of its trucks in a reasonable and timely manner"; and (3) "provide reasonable warnings of construction materials being dumped on the public roadway by one of its trucks." *Id*. at ¶¶ 12, 16, 18, 20, 23.

Defendant Obsidian Specialty Insurance Company ("Obsidian") issued an insurance policy to Bartley as the Named Insured for the policy period October 30, 2021 to October 30, 2022, under Policy No. TAPX-CP-000000069-00 (the "Obsidian Policy"). Obsidian is providing a defense to Bartley as its named insured in the Underlying Lawsuit. Archer Western alleges in its federal complaint that it also qualifies as an insured under the Obsidian Policy for the Underlying Lawsuit. Archer Western seeks a declaration that Obsidian has a duty to defend Archer Western in the Underlying Lawsuit (Count I). In addition, Archer Western seeks a judgment against Obsidian for breach of contract based on Obsidian's failure to defend Archer Western (Count II) and a declaration that Obsidian's conduct constitutes bad faith (Count III). Obsidian now moves to dismiss all counts of Archer Western's complaint, arguing that it has no duty to defend Archer Western in the Underlying Lawsuit. For the following reasons, Obsidian's motion [10] is granted.

## DISCUSSION

The crux of the parties' dispute on the motion to dismiss is whether Archer Western qualifies as an insured under the Obsidian Policy. Obsidian issued the Obsidian Policy to Bartley as the Named Insured providing Covered Autos Liability Coverage with a $1 million limit of insurance. Doc. 10-2 at 14-15. The Obsidian Policy provides:

2

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

    A.    **Coverage**

        We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

* * *

        We have the right and duty to defend any "insured" against a "suit" asking for such damages . . .

* * *

    1.    **Who Is An Insured**

        The following are "insureds":

* * *

        **c.** Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability.

*Id*. at 39. The Obsidian Policy defines the term insured to mean "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." *Id*. at 48.

        Pursuant to Federal Rule of Civil Procedure 12(b)(6), Obsidian moves for dismissal, contending that it owes no duty to defend Archer Western under the Obsidian Policy because Archer Western does not qualify as an insured under the Obsidian Policy. Rule 12(b)(6) provides that a viable complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotes and citation omitted). The Supreme Court has explained that to survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim is plausible where the plaintiff "pleads factual contentt that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court assumes the truth of the allegations in the complaint and construes the complaint and all reasonable inferences in plaintiffs' favor. *Burke v. Boeing Co.*, 42 F.4th 716, 723 (7th Cir. 2022).

### A.     Choice of Law

Obsidian removed this case to federal court based on diversity jurisdiction. When a federal court exercises diversity jurisdiction, it "looks to the choice-of-law rules of the forum state to determine which state's law applies to the issues before it." *Paulsen v. Abbott Labs.*, 39 F.4th 473, 477 (7th Cir. 2022) (internal quotes and citation omitted). "Under Illinois choice-of-law rules, the forum state's law applies unless an actual conflict with another's state law is shown or the parties agree that forum law does not apply." *Id.* (internal quotes and citation omitted). According to Illinois' choice-of-law principles, "the law of the state with the most significant relationship to the occurrence and the parties applies in the event of a conflict." *Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019) (internal quotes and citation omitted). Actual conflict is shown by demonstrating that "a difference in law will make a difference in the outcome." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. S.Ct. 2014) (internal quotes and citation omitted). "Illinois also follows the doctrine of depecage, which allows for 'cutting up a case into individual issues, each subject to a separate choice-of-law analysis.'" *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1035 (N.D. Ill. 2013) (internal quotes and citation omitted).

The parties largely agree that Florida law applies to determining whether a duty to defend Archer Western in the Underlying Lawsuit exists. *See* Doc. 10 at 7 n.1; Doc. 17 at 5, 8, 9, 15-16; Doc. 18 at 7. Obsidian asserts, and Archer Western does not dispute, that Florida maintains the most significant contacts with respect to this dispute, including that: (1) the Obsidian Policy was

4

issued to Bartley, a Florida corporation, and was delivered to Bartley at its business address in Florida; (2) the Obsidian Policy states that it is issued under the Florida Surplus Lines Law and was procured from a producing agent located in Florida; (3) the Obsidian Policy includes endorsements applicable to Florida law; and (4) the Underlying Lawsuit is pending in Florida and concerns an accident that occurred in Florida. Thus, the Court applies Florida law to whether Archer Western qualifies an insured under the Obsidian Policy.

Notwithstanding Archer Western's failure to contest that Florida maintains the most significant relationship to this dispute, Archer Western seeks application of Illinois law on two issues (without addressing the choice of law issue): waiver/estoppel and prematurity doctrine. *See* Doc. 17 at 13-14. Obsidian objects to Archer Western's application of Illinois law but has not shown a conflict between Illinois and Florida law on these two issues. *Bridgeview Health Care Ctr., Ltd.*, 10 N.E.3d at 905 ("[t]he party seeking the choice-of-law determination bears the burden of demonstrating a conflict."). Obsidian's failure to demonstrate any conflict between Illinois and Florida law renders a choice-of-law analysis inappropriate. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637-38 (7th Cir. 2021). Moreover, even accepting Archer Western's choice of Illinois law, it is not outcome determinative. Thus, it is unnecessary for the Court to decide which state's law applies for these two issues because any differences in state law are immaterial to the outcome of the motion to dismiss. *Mesa Labs, Inc. v. Fed. Ins.*, 994 F.3d 865, 868 (7th Cir. 2021). Accordingly, the Court applies Illinois law on the waiver/estoppel and prematurity doctrine issues. *Brown v. Cont'l Cas. Co.*, 591 F. Supp. 3d 340, 347 (N.D. Ill. Mar. 15, 2022) (applying Illinois law) ("If there is no outcome-determinative conflict, the Court applies the forum law."); *SBC Holdings, Inc. v. Travelers Cas. & Sur. Co.*, 872 N.E.2d 10, 21 (Ill. App. 2007) ("In the absence of a conflict, Illinois law applies as the law of the forum.").

B.     **Duty to Defend**

Under Florida law, courts "determine whether an insurer has a duty to defend its insured based only on the eight corners of the complaint and the policy." *S.-Owners Ins. v. Farrera*, 2025 WL 415464, at *5 (11th Cir. Feb. 6, 2025) (quoting *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 182 (Fla. App. 2015)); *Addison Ins. v. 4000 Island Blvd. Condo. Ass'n, Inc.*, 721 F. App'x 847, 854 (11th Cir. 2017) ("Under Florida law, the determination of an insurer's duty to defend falls under the so-called 'eight corners rule,' the name of which refers to the four corners of the insurance policy and the four corners of the underlying complaint."). Florida courts "consider the facts alleged in the complaint as they are fairly read." *S.-Owners Ins.*, 2025 WL 415464, at *5 (quoting *Fun Spree Vacations, Inc. v. Orion Ins.*, 659 So. 2d 419, 421 (Fla. App. 1995)). "Put simply, the eight corners rule provides that an insurer's duty to defend its insured against a legal action 'arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.'" *Addison Ins.*, 721 F. App'x at 854 ((quoting *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. S.Ct. 2005)). By contrast, "[w]here the allegations in the complaint show that no coverage exists or a policy exclusion applies, no duty to defend arises." *James River Ins. v. Bodywell Nutrition, LLC*, 842 F. Supp. 2d 1351, 1354 (S.D. Fla. 2012) (citing *Posigian v. Am. Reliance Ins. of N.J.*, 549 So.2d 751, 753 (Fla. App. 1989)).

The main issue before the Court is whether Archer Western is covered as an insured under the Obsidian Policy such that a duty to defend arose. Archer Western asserts that it qualifies as an insured under the Obsidian Policy as "[a]nyone liable for the conduct of" Bartley, the Named Insured on the Obsidian Policy. Obsidian argues that the phrase "[a]nyone liable for the conduct of the insured" in the Obsidian Policy only affords coverage for vicarious liability claims. *See Harco Nat'l Ins. v. Zurich Am. Ins.*, 2011 WL 4460261, at *18 (M.D. Fla. Sept. 26, 2011), *aff'd*

479 F. App'x 920 (11th Cir. 2012); Doc. 10 at 8 (citing cases). Archer Western does not contest that coverage of an additional insured is limited to claims for vicarious liability. *See* Pl's Br. Opp. (Doc. 17 at 9) ("to trigger the duty to defend, the [underlying] [c]omplaint must allege that Archer Western is liable for the conduct of Bartley."). In other words, Archer Western may only qualify as an insured under the Obsidian Policy if the Underlying Lawsuit asserts a vicarious liability claim against Archer Western for the conduct of Bartley.

In general, under Florida law, "a principal's vicarious liability for the negligence of another is a separate cause of action that must be specifically pled in the complaint." *Goldschmidt v. Holman*, 571 So. 2d 422, 423 (Fla. S.Ct. 1990) ("a defendant could not be found liable under a theory of vicarious liability that was not specifically pled."). Numerous state and federal decisions are in accord. *See Desvarieux v. Bridgestone Retail Operations, LLC*, 300 So.3d 723, 729 (Fla. App. 2020) (plaintiff's argument regarding apparent agency lacked merit as the complaint failed to plead a separate cause of action for vicarious liability); *King Cole Condo Ass'n, Inc. v. Mid-Continent Cas. Co.*, 21 F. Supp. 3d 1296, 1299 (S.D. Fla. 2014) ("Florida law requires a claimant to specifically plead vicarious liability as a separate cause of action."); *Prager v. FMS Bond, Inc.*, 2010 WL 2950065, at *9 (S.D. Fla. July 26, 2010) ("Under Florida law, vicarious liability must be pled specifically in separate cause of action."); *Gen. Asphalt Co. v. Bob's Barricades, Inc.*, 22 So.3d 697, 699 (Fla. App. 2009) ("Florida law is clear that in order to pursue a vicarious liability claim, the claimant must specifically plead it as a separate cause of action.").[1]

Obsidian argues that the Underlying Complaint alleges only Archer Western's direct negligence, rather than vicarious liability for Bartley's negligence. The Underlying Complaint

---

[1] *See also Amerisure Ins. v. Seneca Specialty Ins.*, 2020 WL 3317035, at *5 (S.D. Fla. June 18, 2020); *Liberty Mut. Fire Ins. v. State Farm Fla. Ins.*, 2016 WL 7507870, at *8 (S.D. Fla. Sept. 29, 2016), *aff'd in part, vacated in part, remanded*, 770 F. App'x 475 (11th Cir. 2019); *N. Broward Hosp. Dist. v. Kalitan*, 174 So. 3d 403, 412 (Fla. App. 2015).

7

asserts one count against Archer Western for "Negligence *of* Archer Western Construction, LLC" (Count I). Doc. 10-1 at 5 (emphasis added). Thus, the Underlying Complaint only pleads direct negligence against Archer Western and fails to plead Archer Western's vicarious liability based on Bartley's negligence. Because the complaint in the Underlying Lawsuit fails to plead a separate cause of action for vicarious liability against Archer Western for the direct negligence of Bartley, Archer Western does not qualify as an insured under the Obsidian Policy for the Underlying Lawsuit.

That said, Archer Western contends that Count I of the Underlying Complaint is mislabeled as a direct negligence claim against Archer Western. Archer Western argues that the Underlying Complaint should be interpreted as alleging sufficient facts for vicarious liability, although not designated that way. According to Archer Western, the underlying plaintiff is attempting to hold Archer Western vicariously liable for the negligence of Bartley based on an agency theory of liability. In particular, Archer Western claims that the substance of the allegations of Count I support a claim for vicarious liability because they allege that Archer Western retained control over Bartley's conduct.[2]

Under Florida law, generally "a principal is not vicariously liable for the negligence of its independent contractor, but the principal is liable for the negligence of its agent." *Del Pilar v. DHL*

---

[2] In support of its argument that a mislabeled cause of action may sufficiently plead a valid cause of action for vicarious liability, Archer Western cites *Mclean v. Carnival Corp.*, 2023 WL 372061, at *1 (S.D. Fla. Jan. 24, 2023), but that case is distinguishable. In *Mclean*, the court held that "the supporting paragraphs of both counts make clear that the Plaintiff pleads claims for vicarious liability," despite being mistitled as claims for "negligence." *Id*. at *2. The *Mclean* complaint alleged that certain employees of the defendant cruise line engaged in a specific negligent act and that those employees were acting within the scope of their employment. *Id*. at *3. The court found these allegations supported that "(1) the employees acted negligently and (2) Carnival may be vicariously liable for its employees' negligent actions." *Id*. Moreover, the plaintiff "specifically allege[d] that she d[id] not intend to bring" claims of direct negligence against Carnival. *Id*. In contrast, the Underlying Complaint here fails to make clear that the underlying plaintiff pleads a claim for vicarious liability. To the contrary, the Underlying Complaint alleges Archer Western owed an independent duty to the underlying plaintiff and breached that duty through its own negligent acts and omissions.

8

*Glob. Customer Sols. (USA), Inc.*, 993 So. 2d 142, 145 (Fla. App. 2008). "The standard for determining whether an alleged agent is an independent contractor is the degree of control exercised by the employer or owner of the alleged agent." *Johnson v. Unique Vacations, Inc.,* 498 F. App'x 892, 895 (11th Cir.2012) (quoting *Vermeulen v. Worldwide Holidays, Inc.,* 922 So.2d 271, 274 (Fla. App. 2006) ("For the agency relationship to exist, there must be some affirmative evidence of ownership, operation or control.")); *Harper ex rel. Daley v. Toler,* 884 So.2d 1124, 1131 (Fla. App. 2004) (observing that extent of principal's control is "most important factor"). "To hold a principal vicariously liable under an agency theory of liability, a plaintiff must sufficiently allege the elements of agency in addition to the elements of the underlying negligent act of the agent for which the plaintiff seeks to hold the principal liable." *Ferretti v. NCL (Bahamas) Ltd.*, 2018 WL 1449201, at *4 (S.D. Fla. Mar. 22, 2018).

Here, the allegations of the Underlying Complaint do not fairly and plausibly allege a claim for vicarious liability against Archer Western for Bartley's actions. While the Underlying Complaint alleges that Bartley was a "subcontractor" hired by Archer Western, it contains no allegation that Archer Western is responsible for Bartley's alleged negligence. Doc. 10-1 at ¶ 4. The Underlying Complaint does not allege that Bartley was acting under the direction and control of Archer Western or allege an agency relationship between Bartley and Archer Western. For example, the words "vicarious liability," "principal, "agent," "direction," "control," or "respondeat superior" are not included in the Underlying Complaint.

Archer Western focuses on the portions of the Underlying Complaint where it is alleged that Archer Western should have inspected Bartley's truck, warned the underlying plaintiff of the debris on the roadway, and cleaned up after Bartley. Archer Western reasons that the failure to inspect allegation suggests that Archer Western should have exercised its control over Bartley and

stopped or corrected Bartley's conduct. Yet the entirety of these allegations about Archer Western assert that Archer Western's own negligent acts and omissions form the basis of Archer Western's liability in the Underlying Lawsuit. The Underlying Complaint pleads the following facts: (1) "*Archer Western Construction, LLC, had a duty* [] to reasonably inspect trucks hauling materials to and from its construction site to be reasonably certain that the trucks would not dump construction materials onto the public roadway[,]" "to clean up construction materials dumped by a truck going to or from its construction site in a reasonable and timely manner[,]" and "to clean up construction materials dumped by a truck going to or from its construction site in a reasonable and timely manner"; (2) "Archer Western Construction, LLC, breached *its duty* [] by failing to perform reasonable inspections of the E. Bartley Enterprise, Inc. truck[,]" "clean up the construction materials dumped by the E. Bartley Enterprise, Inc. truck in a reasonable and timely manner[,]" and "provide reasonable warnings of construction materials being dumped onto the public roadway by the E. Bartley Enterprise, Inc."; (3) Archer Western's breach of "*its* dut[ies]" was a legal cause of the crash and injuries to the underlying plaintiff; and (4) "[a]s a result of *Defendants'* negligence," the underlying plaintiff has suffered damages. Doc. 10-1 at ¶¶ 6 8, 10, 15, 17, 19, 21.

The Underlying Complaint's explicit allegations that Archer Western owed the underlying plaintiff a duty, breached that duty, and its breach of that duty proximately caused the underlying plaintiff to suffer injury amount to a claim for Archer Western's direct negligence rather than a claim for vicarious liability. *Pla v. Rierson*, --- So.3d ----, 2025 WL 854642, at *2 (Fla. App. Mar. 19, 2025) (To state a claim for negligence, a plaintiff must allege: "1) the existence of a legal duty or obligation, 2) a breach of that duty, 3) proximate causation to the injury; and 4) actual loss or damage."). Moreover, Archer Western's duty to the underlying plaintiff would not be relevant to

claim based on vicarious liability. *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.,* 908 So.2d 459, 468 (Fla. S.Ct. 2005) ("The vicariously liable party has not breached any duty to the plaintiff; its liability is based solely on the legal imputation of responsibility for another party's tortious acts."). The above allegations against Archer Western do not allege that Archer Western is liable based on *Bartley*'s acts or failure to act. The Underlying Complaint also lacks any factual allegations referring to Archer Western's control over Bartley's work. Thus, the specific allegations of the Underlying Complaint do not suggest that Archer Western may be held liable under a vicarious liability theory.

In sum, the Court concludes that the Underlying Complaint does not explicitly or implicitly assert a claim for Archer Western's vicarious liability based on Bartley's direct negligence. With no allegations of vicarious liability in the Underlying Complaint, there is no potential that Archer Western will be held vicariously liable for the conduct of Bartley. So Archer Western does not qualify as an insured under the Obsidian Policy for the claim asserted against it and Obsidian has no duty to defend Archer Western for the Underlying Lawsuit.

Archer Western next argues that Obsidian has waived or should be estopped from asserting its denial of coverage under Illinois law. But the case Archer Westen cites in support of this argument compels the opposite conclusion. Archer Western relies on *Employers Insurance of Wausau* to argue that since Obsidian failed to defend Archer Western under a reservation of rights or seek a declaratory judgment that there is no coverage, it has waived or is estopped from raising coverage defenses to the Underlying Lawsuit. *Employers Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1136 (Ill. S.Ct. 1999). Even if Illinois law applied to this issue, the *Employers Insurance of Wausau* case is clear that the estoppel doctrine does not apply where an insurer does not have a duty to defend. *Id*. at 1135 ("Application of the estoppel doctrine is not appropriate if

11

the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered."). As a result, the "estoppel doctrine applies only where an insurer has breached its duty to defend." *Id*. Consistent with *Employers Insurance of Wausau*, estoppel is not relevant here. As explained above, Obsidian has no duty to defend Archer Western as the Underlying Complaint does not seek to hold Archer Western vicariously liable for Bentley's negligence and Archer Western does not qualify as an insured under the Obsidian Policy for the claim asserted against it.

Despite acknowledging that Obsidian's duty to defend Archer Western "primarily involves the [] legal question" of whether the Underlying Complaint contains sufficient vicarious liability allegations, Archer Western also argues that it is inappropriate for the Court to rule on whether Archer Western is vicariously liable for Bentley's conduct, as such question should be left to the state court in the Underlying Lawsuit. Doc. 17 at 9, 10. Under Illinois' prematurity doctrine, Archer Western asserts that a "declaratory judgment should not be used to force parties to an injury action to have a dress rehearsal of an important issue expected to be tried in the injury action." *Hudson Specialty Ins. v. Joseph*, 2020 WL 3050251, at *2 (N.D. Ill. June 8, 2020) (internal quotes and citation omitted).

Assuming without deciding that Illinois law applies to this issue, the Court rejects Archer Western's prematurity doctrine argument as a ground for denying the motion to dismiss. The prematurity doctrine prevents the Court from adjudicating the "ultimate" facts in a pending merits action or determining "disputed factual issues that are critical to . . . liability." *Hudson Specialty Ins.*, 2020 WL 3050251, at *2. According to Archer Western, the relevant ultimate fact is whether Archer Western is vicariously liable for Bartley's conduct. Resolution of whether the underlying plaintiff pleads a claim for vicarious liability against Archer Western does not require determining whether Archer Western is in fact vicariously liable for Bartley's negligence**.** Moreover, the

12

motion to dismiss does not require the Court to determine disputed facts in the Underlying Lawsuit. Instead, determining the duty to defend issue only requires the Court to compare the allegations of the Underlying Complaint to the relevant provisions of Obsidian Policy. *Crum and Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1079 (Ill. S.Ct. 1993); *see also J.B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 571 Fed. App'x 918, 926 (11th Cir. 2014) (same under Florida law). There are no facts in dispute that would obviate the Court's ability to resolve the duty to defend dispute at this stage. *See Cambridge Mut. Fire Ins. v. Bell & Arthur Condo. Ass'n*, 2020 WL 1813653, at *2 (N.D. Ill. Apr. 9, 2020) (rejecting the argument that issuing a declaratory judgment on the duty to defend would be premature because in duty to defend cases, "the Court need not determine any facts to issue a declaratory judgment" as the issue of an insurer's duty to defend "is a question of law—not of fact—and its resolution would not preempt any factual finding in the underlying case.").

Archer Western further requests that if the Court grants Obsidian's motion to dismiss, such dismissal should be without prejudice to any potential amendments to the Underlying Complaint as plaintiff's counsel in the Underlying Lawsuit "has stated that he will be amending the [Underlying] [C]omplaint soon." Doc. 17 at 15. This request is denied. Obsidian's motion seeks a declaration that the Obsidian Policy affords no coverage for the current Underlying Complaint, which is the operative pleading in the Underlying Lawsuit. Further, a dismissal with prejudice would not preclude Archer Western from seeking coverage from Obsidian for any future amended complaint in the Underlying Lawsuit.

Finally, Archer Western requests leave to amend if the Court finds any technical deficiencies with its complaint. Leave to amend is denied as the deficiency raised by Obsidian's motion to dismiss is not merely technical. Moreover, allowing leave to amend would be futile as

13

under no set of facts can the Underlying Complaint plausibly form the basis of a failure to defend action. As explained above, Obsidian has no duty to defend the Underlying Lawsuit based on the allegations of the Underlying Complaint and the provisions of the Obsidian Policy. Accordingly, any proposed amendment to Archer Western's complaint would be futile. *Esco v. City of Chicago*, 107 F.4th 673, 683 (7th Cir. 2024) ("District courts have broad discretion to deny leave to amend the pleadings where the amendment would be futile.").

As Archer Western is not entitled to a defense under the Obsidian Policy for the Underlying Lawsuit, the Court dismiss Counts I and II of Archer Western's Complaint with prejudice. Archer Western concedes that its claim for bad faith in Count III should be dismissed if the Court finds that Archer Western does not qualify as an insured under the Obsidian Policy and Obsidian has no duty to defend Archer Western in the Underlying Lawsuit. Doc. 17 at 15. Accordingly, Count III is also dismissed with prejudice.

## CONCLUSION

For these reasons, the Court grants Obsidian's motion to dismiss [10] with prejudice and without leave to amend prejudice. Civil case terminated.

Dated: April 3, 2025

Sunil R. Harjani
United States District Judge